UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL D. VUNDA,
      Petitioner,

    vs.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:15-cv-301

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

      Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon,

Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc.

1). This matter is before the Court on the petition and respondent's return of writ. (Docs. 1, 7).[1]

# I. PROCEDURAL BACKGROUND

## State Trial Proceeding

      In January 2012, the Butler County, Ohio, grand jury returned a twelve-count indictment

charging petitioner with seven counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b);

three counts of unlawful sexual conduct with a minor in violation of Ohio Rev. Code §

2907.04(A); and two counts of contributing to the unruliness or delinquency of a child in

violation of Ohio Rev. Code § 2919.24(A)(1). (Doc. 6, Ex. 1). The facts giving rise to the

charges were summarized as follows by the Ohio Court of Appeals, Twelfth Appellate District,

based on evidence presented at petitioner's trial:[2]

---

[1] Respondent has also separately filed the trial transcript and 40 exhibits obtained from the underlying state-court record. (*See* Doc. 6).

[2] The Ohio appellate court summarized the facts in its direct appeal decision issued August 11, 2014. (*See* Doc. 6, Ex. 36). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, the appellate court's findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

Appellant immigrated to the United States from the Democratic Republic of Congo in 2000 with the financial support of his sister. Upon arrival, appellant resided with his sister and her family at their house in West Chester, Ohio located in Butler County. The victim, A.P., is appellant's niece who resided in the same West Chester house with her family.

The sexual abuse at the center of this case began in 2000 when A.P. was six years old. According to A.P.'s recollection, the first instance of sexual abuse occurred when she was left home alone with appellant. A.P. testified that she had been in her family computer room, playing on the computer, when appellant came up behind her and began groping her breasts both on top and under her clothing. After the initial encounter, A.P. testified that the sexual abuse escalated. A.P. stated that appellant would feel her vagina both on top and under her clothing and would also insert his fingers into her vagina. When A.P. turned seven years old, the sexual abuse escalated to sexual intercourse.

A.P. elaborated that each instance of sexual abuse occurred when appellant was left alone with her at the West Chester house. A.P. further testified that this abuse occurred routinely over a period of 11 years. A.P. stated that she was often left alone with appellant because he was responsible for waking her up in the morning, taking her to the bus stop for school, and transporting her to basketball practice in the evenings. Over this 11-year period, A.P. clearly indicated that appellant had continuously sexually abused A.P. through numerous acts of vaginal penetration, fellatio, cunnilingus, and digital penetration from 2000-2011.

The sexual abuse ended in 2011 when A.P. was 17 years old after she placed a hidden camera in the basement and captured footage of appellant digitally penetrating her vagina and then engaging in vaginal intercourse. A.P. then showed the video to her mother.

After seeing the video, A.P.'s mother confronted appellant who immediately fell to his knees, began sobbing, and apologized for his actions. In addition, appellant offered to return to the Congo as punishment for the sexual abuse and stated "[f]orgive me, forgive me. I'm willing to go to the Congo." Instead, A.P.'s mother alerted authorities who began an investigation.

Appellant was subsequently brought to the police station and questioned by Detective Mize of the West Chester Police Department. After being advised of his rights, appellant admitted to sexually abusing A.P. and acknowledged that he had been doing so since A.P. was very young. Appellant further elaborated on his admission by acknowledging that he engaged in numerous acts of vaginal penetration, fellation, cunnilingus, and digital penetration with A.P. over the years. When asked how many times that he had engaged in each type of conduct, appellant stated that he could not recall, but admitted that he had touched A.P. in her private areas more than 50 times, engaged in cunnilingus or fellatio at least ten times, and had sexual intercourse with A.P. at least ten times. Furthermore,

appellant admitted that he was the person captured on the hidden camera engaged in sexual intercourse with A.P.

(*Id.*, Ex. 36, pp. 1-3, at PAGEID#: 216-18).

It appears from the record that petitioner was assisted by two attorneys, Robert Qucsai III and Lawrence Hawkins, during the trial proceedings. Prior to trial, counsel filed a number of motions on petitioner's behalf, including a motion in limine to limit the testimony of a potential state witness and to hold a hearing to determine whether the witness qualified to be an expert witness, as well as a motion in limine to exclude "other acts" testimony contained in petitioner's videotaped statement. (*See id.*, Exs. 2, 8 & Trial Tr. at PAGEID#: 257-352). Counsel also filed a motion to suppress any oral or written statements made by or elicited from petitioner. (*Id.*, Ex. 5). Counsel argued in part that petitioner's statements could not be admitted into evidence because they "were made without prior advice and recognition of defendant's rights to remain silent and to have the effective assistance of counsel" and "were involuntary." (*Id.*, Ex. 5). Following extensive hearings held on May 10 and May 17-18, 2012, the trial court denied the suppression motion and the motions in limine and also ruled on other matters raised in additional motions filed by counsel on petitioner's behalf. (*Id.*, Exs. 7 & Trial Tr. at PAGEID#: 257-352).

The matter proceeded to trial before a jury, which found petitioner guilty of six of the rape charges (Counts 2-7), as well as the remaining charges of unlawful sexual conduct with a minor and contributing to the unruliness or delinquency of a child (Counts 8-12). (*See id.*, Ex. 10). The jury also specifically found with respect to the rape offense charged in Count 4 that "the victim was less than ten years of age at the time of the offense." (*Id.*, at PAGEID#: 66).

On July 10, 2012, following a sentencing and sexual predator hearing in which petitioner was determined to be a "sexually oriented offender" (*see id.*, Ex. 11), the trial court issued a Judgment Entry sentencing petitioner to the following terms of imprisonment: a life term of

3

imprisonment "with the possibility of parole in 10 years" for the rape offense charged in Count 4 and concurrent prison terms of ten (10) years for the remaining rape offenses charged in Counts 2, 3, 5, 6 and 7; prison terms of four (4) years for the three unlawful-sexual-conduct offenses, to be served concurrently with each other but consecutively to the concurrent sentences imposed for the rape offenses charged in Counts 2, 3, 5, 6 and 7; and concurrent 170-day prison terms for the two counts of contributing to the unruliness or delinquency of a child. (*Id.*, Ex. 12, at PAGEID#: 69-70). Petitioner's aggregate sentence amounted to a prison term of fourteen (14) years to life. (*See id.*, Trial Tr. at PAGEID#: 1015).

**State Appeal Proceedings**

Petitioner's trial counsel filed a timely notice of appeal on petitioner's behalf to the Ohio Court of Appeals, Twelfth Appellate District. (Doc. 6, Ex. 13). Petitioner's trial counsel also filed a motion for appointment of new counsel to represent petitioner on appeal, which was granted. (*See id.*, Exs. 14-15). Initially, the appeal was dismissed because the new attorney did not file an appellate brief by the deadline date set and extended by the court. (*See id.*, Exs. 16-19). Petitioner responded to the dismissal by filing a *pro se* pleading, which the appellate court construed "as an application for reopening due to ineffective assistance of appellate counsel." (*See id.*, Exs. 20-21). The court granted the reopening application and consolidated the reopened appeal with a separate *pro se* delayed appeal filed by petitioner. (*See id.*, Exs. 21-24).

In the consolidated *pro se* appeal, petitioner asserted eight assignments of error, quoted below, in his final amended appellate brief:[3]

1. During incommunicado interrogation in police (dominated) atmosphere, without full warning of constitutional rights, were not understandable to a French speaking foreigner. This action violated the Fifth Amendment

---

[3] It is noted that petitioner made many typographical and grammatical errors in his appellate brief. Although the undersigned has made some corrections in quoting from that brief, many of the original grammatical errors remain uncorrected in this Report and Recommendation.

privilege against self-incrimination.

2. The court violated the Sixth Amendment when the court appointed a[n] attorney [who had] never been to trial or had never been effective as to his own client[.] [T]his attorney was a dead give[-away] to a win to the prosecution as this court knew for a fact this attorney never has been to trial[.] [T]his violated the Fourteenth Amendment and violated the defendant[']s right to a fair trial, under the [D]ue Process Clause and equal protection rights.

3. When the jury found Mr. Vunda not guilty of count one this created Plain Error and a jurisdictional defect in this proceeding[].

4. The court erred when [the] prosecution did not establish[] venue as to where the alleged rapes occur[r]ed; there was not a Prima Faci[e] showing as to create proof beyond a reasonable doubt, the crime occur[r]ed in the convicting county.

5. The defendant has establish[ed] a Prima Faci[e] showing of discrimin[ation] in denying jurors of his peers and not to be prejudiced because of being African, and from a different country[.] [T]his violated the Equal Protection Clause U.S.C.A. Constit.Amend.14.

6. The Appellant was denied Due Process and a fair trial when the prosecutor engaged in misconduct at trial, which . . . substantially prejudiced appellant and misled the jury. . . .

7. The Cumulative Doctrine must be presented in this "Conglomeration" of the den[ial] of the truth, which created a[n] unfair trial and a non[-]supporting conviction of all of the charges in the indictment, and the over indictment that judgment must be of acquittal, this violation of due process and equal protection of the law.

8. The [C]onstitution[] required . . . the state to correct remedy of perjured testimony and the final remedy that must be presented on the truth of all testimon[ie]s to create a fair trial for the defendant. . . . [T]his den[ial] of a corrective remedy violated the equal protection and due process of the law, under the (14th)amend.

(*Id.*, Ex. 33).

On August 11, 2014, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.*, Ex. 36).

Petitioner next pursued a timely *pro se* appeal to the Ohio Supreme Court. (*See id.*, Exs.

37-38). In his memorandum in support of jurisdiction, petitioner alleged as propositions of law all of the claims that had been asserted on direct appeal except for the fourth assignment of error challenging the sufficiency of the venue evidence. (*See id.*, Ex. 38). On February 18, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.*, Ex. 40).

### Federal Habeas Corpus Petition

The instant federal habeas corpus action commenced in May 2015. (*See* Doc. 1). In his *pro se* petition, petitioner presents the following grounds for relief:

> **Ground One:** The police violated the petitioner[']s 5th amend. self-incrimination rights. . . .
>
> **Ground Two:** Ineffective Assistan[ce] of Counsel, Violated the 6th Amend. This court appointed counsel has never had a trial ever[.] [T]his violated due process and equal protection of the law.
>
> **Ground Three:** Plain Error and a Structural defect in whole proceedings and a jurisdictional defect at trial level.
>
> **Ground Four:** The petitioner was . . . den[ied] his right to jury of his peers . . . and not to be prejudiced because of being African, and from a different country[.] This violated Equal Protection Clause, 14th and 6th Amend.
>
> **Ground Five:** The defendant was denied the right to a fair trial when the prosecutor engaged in misconduct . . . .
>
> **Ground Six:** The Cumulative Doctrine must be presented in a Conglomeration of the truth[.] [T]his denied the right to a fair trial, and violated, due process and equal protection of the law.
>
> **Ground Seven:** The state was suppose[d] to correct all remedies after a perjured testimony and the final remedy that must be present on the trial of the truth. [T]his created a[n] unfair trial, and violated the equal protection of the law, U.S.C[.]A. 14th Amend.

(Doc. 1, at PAGEID#: 6, 8, 9, 11, 13).

Respondent has filed a return of writ addressing each of petitioner's claims. (Doc. 7).

## II. OPINION

This Court's review of petitioner's grounds for relief is limited. First, in this federal

habeas proceeding, the Court has jurisdiction to review petitioner's claims only to the extent that

petitioner challenges his confinement based on an alleged violation of the Constitution, laws or

treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. §

2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* 562 U.S. 1, 5

(2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a

federal court to reexamine state-court determinations on state-law questions"). "[B]ecause the

state courts are the final authority on state-law issues, the federal habeas court must defer to and

is bound by the state court's rulings on such matters." *Bennett v. Warden, Lebanon Corr. Inst.,*

782 F. Supp.2d 466, 478 (S.D. Ohio 2011) (and cases cited therein); *see also Warner v. Zent*, 997

F.2d 116, 133 (6th Cir. 1993) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975)) (absent

a showing of "extreme circumstances where it appears that the [state court's] interpretation of

[state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas

court is bound by the state court's determination of state law"); *Meyers v. Ohio*, No. 1:14cv1505,

2016 WL 922633, at *7 (N.D. Ohio Jan. 21, 2016) (Report & Recommendation) (citing *Olsen v.

McFaul*, 843 F.2d 918, 929 (6th Cir. 1988)) ("federal habeas courts are bound by decisions of

intermediate state courts on questions of state law unless convinced that the state's highest court

would decide the issue differently"), *adopted*, 2016 WL 916602 (N.D. Ohio Mar. 9, 2016). *Cf.

Jones v. Woods*, __ F. App'x __, No. 15-1031, 2015 WL 9309374, at *4 (6th Cir. Dec. 22, 2015)

(citing *Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005)) (in affirming the district court's

denial of a habeas petition based on a claim that the petitioner's trial counsel was ineffective for

failing to request a self-defense jury instruction, the Sixth Circuit emphasized that "[w]e are

bound by the [state] Court of Appeals' determination that [the petitioner] was not entitled to the

instruction under state law").

7

Second, the Court's review of federal constitutional claims that have been adjudicated on the merits by the state courts is circumscribed. Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* [563] U.S. [170], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's

8

> determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court has further held that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams,* _ U.S. _, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington,* 562 U.S. at 102. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher,* _ U.S. _, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases

already decided at the time the state court made its decision"). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412); *see also White v. Woodall,* __ U.S. __, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields,* __ U.S. __, 132 S.Ct. 1181, 1187 (2012) (internal citation and quotation marks omitted)) ("[C]learly established Federal law' for purposes of § 2254(d)(1) includes 'only the holdings, as opposed to the dicta, of this Court's decisions."). Decisions by lower courts are relevant only "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte,* 654 F.3d at 600 (quoting *Landrum v. Mitchell,* 625 F.3d 905, 914 (6th Cir. 2010)).

Finally, as noted above, *see supra,* p. 1 n.2, in accordance with 28 U.S.C. § 2254(e)(1), this Court must presume factual findings made by the state courts are correct in the absence of "clear and convincing evidence" rebutting those findings. *Cf. Holland v. Rivard,* 800 F.3d 224, 242 (6th Cir. 2015), *cert. denied,* No. 15-7616, 2016 WL 854271 (U.S. Mar. 7, 2016).

With these general principles in mind, the Court turns now to address each of petitioner's grounds for relief.

## A. Ground One: *Miranda* Claim

In Ground One of the petition, petitioner claims that the trial court violated his constitutional rights when it denied his motion to suppress statements he made to the police because the statements were obtained in violation of the Fifth Amendment privilege against self-incrimination. (*See* Doc. 1, at PAGEID#: 6).

It appears from the record that in his suppression motion, petitioner sought to exclude

statements that he made in a videotaped interview with Detective Mize of the West Chester Police Department. Detective Mize was the only witness who testified at the hearing held on the motion. Mize stated that prior to questioning, he advised petitioner of his rights pursuant to the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), and petitioner "sign[ed] his name acknowledging that he understood his rights and that he was willing to speak with [Mize] about the case" on the "*Miranda* rights warning card" provided by the prosecutor's office. (Doc. 6, Trial Tr. at PAGEID#: 272-73). A copy of the card that was signed by petitioner and witnessed by Mize was introduced into evidence as "State's Exhibit 1." (*Id.*, at PAGEID#: 272, 281).

Mize testified that during the interview, petitioner never mentioned that "he wanted to remain silent" or "wanted to have an attorney present." (*Id.*, at PAGEID#: 273). Mize also said that he did not make any promises to petitioner; did not coerce or threaten petitioner into giving a statement; did not deprive petitioner of food, medication or sleep; and did not abuse petitioner in any way. (*Id.*, at PAGEID#: 273-74). Although Mize stated on cross-examination that he never offered an interpreter or asked petitioner if he needed an interpreter for the interview, Mize also testified that petitioner never attempted "to speak to him in any other language than English"; that he understood what petitioner was telling him; and that he "perceived that [petitioner] was understanding what [he] was trying to say . . . as well." (*Id.*, at PAGEID#: 271, 277-78). Mize affirmed that during the interview, petitioner would "at times . . . clarify things . . . or correct things that [Mize] had stated." (*Id.*, at PAGEID#: 270). Mize also affirmed that the video recording of the interview, which was marked and introduced into evidence, "truly and accurately depict[ed] the conversation that [he] had with [petitioner]." (*Id.*). The video recording was played and re-played at the court's request before the court rendered its decision

11

overruling petitioner's suppression motion. (*See id.*, Trial Tr. at PAGEID#: 264-68, 285).

On direct appeal, petitioner contended in his first assignment of error that as a "foreigner" who lacks understanding of the American "justice system" and whose native language is French, he was not "effectively advise[d]" of his *Miranda* rights by Detective Mize. (*See id.*, Ex. 33, at PAGEID#: 139-40). Petitioner also argued that his waiver of his right to remain silent was not "voluntarily, knowingly and intel[l]igently" made. (*Id.*, at PAGEID#: 139). The Ohio Court of Appeals, which was the last state court to issue a reasoned decision addressing the merits of petitioner's claim, overruled the assignment of error, reasoning in relevant part as follows:

> "When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he be given *Miranda* warnings to protect against compelled self-incrimination.". . . "A suspect may then knowingly and intelligently waive these rights and agree to make a statement." . . .  If a defendant later challenges a confession as involuntary, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. . . .   To determine whether a valid waiver occurred, we "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.". . .

> The trial court held a hearing on appellant's motion to suppress the statements made to Detective Mize. After hearing the evidence presented, the trial court overruled appellant's motion. In pertinent part, the trial court found:

>> The Court will find the defendant freely and voluntarily gave his statement, that he was properly Mirandized, he was given all the warnings as set forth in State's Exhibit 1. It's clear from the tape that he understood the English language. He appeared in this tape to be relaxed, willing to answer the questions. Does not appear there were promises or inducements inappropriately made to this defendant.

>> The defendant was advised of his right to remain silent, to stop the questioning. Was advised regarding his right to an attorney. He did not exercise any of those rights. He was not deprived of any necessities. The interview process, the interview itself was not excessively long. In fact, we all sat here probably for more than a half an hour or hour, longer than this, the interview itself here in the courtroom and none of us needed or asked for a break. The

12

court didn't observe that there was any evidence of abuse, physical or otherwise.

Now, it's not completely clear to this Court whether the defendant was able to read and understand the English language, but it is clear from the exchange that the defendant understood that by signing the card, that he was agreeing and acknowledging that Detective Mize had read to him his Miranda rights. The Court will find that he was properly Mirandized.

Based on our review of the record, we find the trial court properly denied appellant's motion to suppress. The record reflects that Detective Mize read appellant his *Miranda* rights prior to any questioning and appellant voluntarily waived those rights. The video evidence clearly establishes that Detective Mize orally advised appellant of his rights on multiple occasions and appellant understood his rights. Detective Mize also paraphrased those rights to make it clear that appellant had no obligation to consent to any interview with police. In addition, the record reflects that appellant was provided with a written notice of his *Miranda* rights and appellant voluntarily signed his name to that document, which provides "I [Paul Vunda] have been advised of all my rights as contained on this card and I understand all of them and I wish to talk to you without having a lawyer present." In conclusion, the record clearly establishes that appellant was repeatedly advised of his Miranda rights, but nevertheless chose to continue with the interview.

Although appellant claims that he did not understand the English language and therefore was not able to knowingly, intelligently, and voluntarily waive his *Miranda* rights, we find those arguments are contrary to the facts of the case. Appellant's videotaped interview with Detective Mize clearly indicates that appellant understood the English language and was capable of understanding his rights. Appellant had been living in the United States for more than a decade and communicated with Detective Mize in English. Although Detective Mize testified that appellant had an accent, he also stated that appellant did not appear to have any difficulty understanding or speaking the English language. Appellant did not request that the interview be conducted in French or ask for an interpreter. Throughout the entirety of the interview, appellant appeared relaxed and willing to answer the interrogating officer's questions. Appellant's comprehension of the language and subject matter of the interview was evident based on the fact that he provided relevant and appropriate responses to Detective Mize's questions. In addition, appellant was very clear in asking Detective Mize to clarify questions and was not hesitant to correct the detective when the detective misunderstood a response. In sum, the trial court correctly found that appellant had voluntarily waived his *Miranda* rights. Accordingly, the trial court did not err in denying appellant's motion to suppress.

(*See* Doc. 6, Ex. 36, pp. 4-7, at PAGEID#: 219-22) (Ohio case citations and footnote omitted).

The Fifth Amendment, which applies to the states by virtue of the Fourteenth Amendment,[4] provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, the Supreme Court established certain procedural safeguards to ensure the Fifth Amendment guarantee is not undermined in the custodial-interrogation setting, which in and of itself involves "inherent" coercion. *See Miranda*, 384 U.S. at 444, 457-58. Specifically, as the Ohio Court of Appeals recognized in this case, *Miranda* requires that prior to any custodial interrogation, the person being questioned must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. *Id.* at 444. It is well-established that statements obtained in violation of *Miranda* must be excluded from the prosecution's case-in-chief even if the statements are otherwise voluntary within the meaning of the Fifth Amendment. *See Oregon v. Elstad*, 470 U.S. 298, 307 (1985). However, as the Ohio Court of Appeals also recognized in this case, a person informed of his *Miranda* rights can waive those rights as long as "the waiver is made voluntarily, knowingly and intelligently." *Moran v. Burbine,* 475 U.S. 412, 421 (1986) (quoting *Miranda*, 384 U.S. at 444); *see also Colorado v. Spring,* 479 U.S. 564, 856-57 (1987); *Edwards v. Arizona,* 451 U.S. 477, 482 (1981); *Clement v. Kelly*, __ F. App'x __, No. 14-3070, 2016 WL 611789, at *4 (6th Cir. Feb. 16, 2016); *Bush v. Warden, Southern Ohio Corr. Facility*, 573 F. App'x 503, 510 (6th Cir. 2014). An accused's voluntary statements following a valid waiver of his *Miranda* rights are "not 'compelled' within the meaning of the Fifth Amendment" and may be introduced by the prosecution into evidence without implicating constitutional concerns. *See Spring*, 479 U.S. at 573-74.

The question whether an accused has validly waived his *Miranda* rights involves two

---

[4] *See Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

distinct inquiries: (1) whether the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421; *see also Spring*, 479 U.S. at 573. "Only if the totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421 (internal quotation marks and case citation omitted).

"The totality of the circumstances inquiry requires a court to examine 'all the circumstances surrounding the interrogation,' including the suspect's 'age, experience, education, background, and intelligence, and . . . whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.'" *Padgett v. Sexton*, 529 F. App'x 590, 597 (6th Cir. 2013) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 479 U.S. at 574. Nor does the Constitution require the police to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Moran*, 475 U.S. at 422. As long as a suspect's voluntary choice to speak is made with full awareness and comprehension of all the information *Miranda* requires the police to convey—*i.e.*, that the suspect has the constitutionally-protected right to remain silent and to have an attorney present during custodial interrogation and that whatever he chooses to say in response to police questioning may be used as evidence against him—his waiver is knowing and intelligent within the meaning of *Miranda*. *Cf. Spring*, 479 U.S. at 574-75; *Moran*,

475 U.S. at 422-23; *see also Garner v. Mitchell,* 557 F.3d 257, 261 (6th Cir. 2009); *Padgett,* 529 F. App'x at 597.

In this case, it is undisputed that prior to his videotaped custodial interrogation, petitioner was informed of his *Miranda* rights by Detective Mize and signed a waiver of those rights.  In addition, it does not appear that the voluntariness of petitioner's waiver or statements to the police is at issue because petitioner has not presented any arguments or evidence to rebut or even call into question the Ohio courts' reasonable factual determination that the statements he made after being informed of his rights were not coerced or otherwise improperly induced by Detective Mize.  *See* 28 U.S.C. § 2254(e)(1); *see also supra*, pp. 1 n.2, 12-13.  *Cf. Holland v. Rivard*, 800 F.3d 224, 241-42 (6th Cir. 2015), *cert. denied*, No. 15-7616, 2016 WL 854271 (U.S. Mar. 7, 2016).

The sole basis for petitioner's claim of constitutional error is that his waiver was not knowing or intelligent because, as a foreigner whose native language is French, he did not fully comprehend the rights he was giving up or the consequences of his decision to abandon those rights.  However, petitioner has not presented any evidence, and certainly not clear and convincing evidence, to rebut the Ohio courts' factual determination, made after reviewing petitioner's videotaped interview with Mize, that petitioner understood the spoken English language and the *Miranda* rights that Detective Mize relayed to him both orally and in writing. *See* 28 U.S.C. § 2254(e)(1); *see also supra*, pp. 1 n.2, 12-13.  As the Ohio Court of Appeals pointed out in affirming the denial of petitioner's suppression motion, petitioner had been living in the United States for more than a decade when the interview was conducted and, during the course of the interview, neither expressed nor showed any difficulty in communicating in English with Detective Mize or any lack of understanding of the *Miranda* warnings that Mize

repeatedly relayed to him. Indeed, at the suppression hearing where petitioner was provided a French-speaking interpreter, petitioner told the interpreter that he understood "most" of what was being said in English and would ask her for help only when he had a question. (*See* Doc. 6, Trial Tr. at PAGEID#: 275).

Upon review of the entire record, the undersigned concludes that it was certainly reasonable for the Ohio courts to find that petitioner was capable of understanding and actually understood "the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Cf. Padgett*, 529 F. App'x at 597. Petitioner is unable to prevail on any claim that his lack of familiarity with the American justice system rendered his waiver invalid. As discussed above, all that is required for a valid waiver under *Miranda* is a full awareness and comprehension of one's constitutionally-protected right to remain silent and to have an attorney present during custodial interrogation and that whatever is said in response to police questioning may be used as evidence. *Cf. Spring*, 479 U.S. at 574-75; *Moran*, 475 U.S. at 422-23; *see also Garner*, 557 F.3d at 261; *Padgett*, 529 F. App'x at 597. Therefore, in the absence of any evidence in the record even remotely suggesting that Mize omitted any of the required *Miranda* warnings when he informed petitioner of his rights, it was reasonable for the Ohio courts to conclude that petitioner's subsequent uncoerced choice to continue with the interview amounted to both a voluntary and knowing, intelligent waiver of those rights.

Accordingly, in sum, petitioner has not demonstrated that he is entitled habeas relief based on his claim in Ground One challenging the denial of his motion to suppress statements that he made during his videotaped interrogation by Detective Mize. The Ohio courts' adjudication of the Fifth Amendment issue is neither contrary to nor involves an unreasonable application of *Miranda* and its progeny. Because petitioner has not shown that the state courts'

rejection of his constitutional claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *see Harrington*, 562 U.S. at 103, petitioner is not entitled to habeas relief based on such claim.

## B.  Ground Two:  Ineffective-Assistance-Of-Trial-Counsel Claim

In Ground Two of the petition, petitioner alleges that he was deprived of his Sixth Amendment right to the effective assistance of counsel during the trial proceedings.  (Doc. 1, at PAGEID#: 8).  Petitioner asserts as factual support for the ground for relief that his court-appointed attorney lacked any trial experience and that counsel "never investigated witnesses, never impeached the alleged victim[']s testimony," and did not seek dismissal of the criminal charges on the ground that the victim's "testimony was perjured." (*See id.*).  Although the allegations contained in the petition are general, in his state appellate brief, petitioner identified Robert Qucsai as the defense attorney who lacked trial experience.  (*See* Doc. 6, Ex. 33, at PAGEID#: 141).  Petitioner also claimed on direct appeal that his counsel "never questioned any witnesses" and "should have investigated th[e] time frame" of the charged offenses that allegedly occurred over the course of several years given that the "only real evidence" presented against him pertained to the incident occurring "in May of 2011 when [the victim] was 17" years old. (*Id.*).  Finally, petitioner contended that his counsel should have impeached the victim, who testified for the State at trial, "for committing perjury on the stand." (*Id.*, at PAGEID: 143).[5]

The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing the merits of these specific issues, ruled in relevant part as follows:

---

[5] In the direct appeal proceedings, petitioner presented other additional arguments challenging his trial counsel's performance. (*See* Doc. 6, Ex. 33, at PAGEID#: 142).  However, petitioner abandoned those arguments on further appeal to the Ohio Supreme Court and has not asserted them in the instant petition. (*See id.*, Ex. 38, at PAGEID#: 246-47).  Therefore, those arguments are not addressed herein.

To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984)[.]... Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. . . .

We first address appellant's complaints regarding his trial counsel's lack of preparation. In his brief, appellant argues that his trial counsel was ineffective for failing to question any witnesses, and failing to fully investigate the time frame of the allegations. Appellant bases this argument on his contention that the "only real evidence" of sexual abuse in this case was the videotape of appellant having vaginal intercourse with A.P. in 2011 when the victim was 17 years old. Appellant further maintains that "if [the attorney] had done his job there would be only one charge. This charge would have been unlawful sexual conduct with a minor." However, . . . there was ample evidence to support appellant's conviction, including the victim's testimony and appellant's own admissions regarding the sexual abuse. Furthermore, the record plainly indicates that appellant's trial counsel did fully investigate this case and zealously represent appellant in this matter. Appellant's trial counsel called five witnesses on appellant's behalf and engaged each state witness in rigorous cross-examination. Indeed, appellant's trial counsel was successful in securing a not guilty [verdict] on one count of rape. Accordingly, appellant's contentions are unfounded.

\*\*\*\*

Finally, we note that appellant also argues that his trial counsel was ineffective based on his counsel's inexperience. In support, appellant alleges that his trial counsel had no prior experience in conducting a jury trial and therefore the case was a "dead bang winner for the prosecution." However, we find this argument is without merit for a number of reasons. First, appellant was appointed two attorneys to represent him in this matter, only one of which appellant claims lacked trial experience. Moreover, as this court has previously acknowledged "[a]ll licensed attorneys, even those practicing in an area of law for the first time, are presumed competent absent a showing of ineffectiveness.". . . The burden of proving lack of competence is on the defendant. . . . In the present case, appellant did not introduce any evidence that his trial counsel was ineffective. Therefore, appellant's argument with respect to his trial counsel's inexperience is overruled.

Based on our review of the entire record, we find that appellant did not receive ineffective assistance of counsel. Accordingly, appellant's . . . assignment of error is without merit and overruled.

19

(*Id.*, Ex. 36, pp. 15-16, 18, at PAGEID#: 230-31, 233) (Ohio case citations omitted).

As a threshold matter, the Ohio Court of Appeals correctly identified the standard of review enunciated by the Supreme Court in *Strickland* as the applicable standard to apply in addressing petitioner's ineffective-assistance-of-counsel claim. As the state appellate court recognized, to establish that his trial counsel was ineffective under *Strickland*, petitioner was required to demonstrate both (1) his trial attorney's conduct was constitutionally deficient; and (2) the attorney's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. Under the first prong of the *Strickland* test, petitioner had to show that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time the conduct occurred. *Id.* at 689. In determining whether or not counsel's performance was deficient, the court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.*

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner had to demonstrate that a "reasonable probability" exists that, but for his counsel's alleged error, the result of his trial would have been different. *See Strickland*, 466 U.S. at 694. That burden is satisfied only by a showing that the result of the trial would "reasonably likely have been different absent the error[]." *Id.* at 695.

The court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The court may dispose of an ineffective-assistance-of-counsel claim by finding that petitioner

made an insufficient showing on either ground. *Id.* at 697.

In this federal habeas action, this Court must employ a "doubly deferential" standard of review in evaluating the reasonableness of the Ohio Court of Appeals' adjudication of petitioner's claim under *Strickland*. *See Woods v. Daniel,* __ U.S. __, 135 S.Ct. 1372, 1376 (2015); *Burt v. Titlow,* __ U.S. __, 134 S.Ct. 10, 13 (2013); *Premo v. Moore*, 562 U.S. 115, 122-23 (2011) (quoting *Harrington*, 562 U.S. at 104-05); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Although "[s]urmounting *Strickland*'s high bar is never an easy task," *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)), the AEDPA requires that a second layer of deference be accorded the state courts' adjudication of ineffective assistance of counsel claims. The Supreme Court has explained:

> Even under *de novo* review, the [*Strickland*] standard for judging counsel's representation is a most deferential one. . . .
>
> ****
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689, and *Knowles*, 556 U.S. at 123); *see also Premo*, 562 U.S. at 122-23. Therefore, on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101.

Upon review of the trial transcript, the undersigned concludes that the Ohio Court of

Appeals' determination that counsel's alleged errors did not amount to ineffective assistance within the meaning of the Sixth Amendment is neither contrary to nor involves an unreasonable application of *Strickland*.

First, it was reasonable for the state court to reject petitioner's claim that attorney Qucsai's lack of trial experience constituted ineffective assistance in and of itself. As the Ohio Court of Appeals pointed out, petitioner was represented at trial not only by Qucsai, but also by another attorney who was not challenged on the ground of inexperience. In any event, Qucsai's alleged inexperience does not mean that his performance at petitioner's trial was either deficient or prejudicial under the two-prong *Strickland* test. *Cf. Hines v. Carpenter*, No. 3:05-0002, 2015 WL 1208684, at *37 (M.D. Tenn. Mar. 16, 2015) (and case cited therein) ("inexperience of counsel alone does not equate to ineffective assistance of counsel");[6] *Mitchell v. Meko,* No. 08-511-KSF, 2012 WL 176583, at *2-3 (E.D. Ky. Jan. 20, 2012) (in overruling the habeas petitioner's objections to the magistrate judge's recommendation to deny his ineffective-assistance-of-counsel claims, the district court agreed with the magistrate judge's determination that "counsel's lack of prior capital experience, by itself, does not constitute a violation of [the] right to effective assistance of counsel"). Here, a review of the trial transcript does not reveal any lack-of-experience incompetency by Qucsai in representing petitioner's interests at trial. Indeed, to the contrary, the record reflects that Qucsai was not only thoroughly prepared and familiar with the relevant facts and law during the trial proceedings, but also, as the Ohio Court of Appeals found, "zealously represent[ed]" petitioner during those proceedings in an effort to establish the defense theory that the victim "made up" the story about her uncle and that the only

---

[6] It is noted that in *Hines*, the District Court later issued an order denying the petitioner a certificate of appealability on the issue of trial counsel's competency and other issues, but granting a certificate of appealability on other issues not pertinent to the case-at-hand. *See Hines v. Carpenter*, No. 3:05-0002, 2015 WL 5715453, at *3 (M.D. Tenn. Sept. 25, 2015).

"mistake" petitioner made was having "sexual contact with [the victim] in 2011 when she was 17 years old." (*See* Doc. 6, Ex. 36, p. 16, at PAGEID#: 231; Trial Tr. at PAGEID#: 381-91, 425-93, 496-99, 548, 557-612, 618, 663-69, 681, 692-710, 716-42, 748-49, 754-70, 775-830, 860-63, 910-28).

Second, it was reasonable for the state appellate court to conclude that petitioner's remaining allegations of ineffectiveness lack merit. As the Ohio court recognized (*see id.*, Ex. 36, p. 16, at PAGEID#: 231), contrary to petitioner's contention that his counsel "never" investigated or questioned witnesses, it appears from the record that the defense attorneys were well prepared for trial and rigorously questioned all witnesses, including the prosecution witnesses, who were called to testify at the trial. In addition, contrary to petitioner's contention that his counsel failed to impeach the victim, it appears from the record that defense counsel engaged in an extensive cross-examination of the victim and presented a number of defense witnesses to cast doubt on the veracity of her testimony against petitioner. Indeed, as counsel explained in opening argument, the defense was based on the theory that, except for the recorded incident that occurred in 2011, the victim had lied about all the other offenses allegedly committed against her by petitioner over the span of several years. (*See id.*, Trial Tr. at PAGEID#: 381-82).

The record further belies any argument that petitioner's trial counsel failed to conduct any investigation prior to trial. As the Ohio Court of Appeals pointed out (*see id.*, Ex. 36, p. 16, at PAGEID#: 231), the defense called not only petitioner but also five other witnesses to testify on petitioner's behalf at trial. To the extent that petitioner has generally alleged his trial counsel failed to adequately investigate witnesses or the time frame of the charged offenses, he has not demonstrated that a further investigation would have led to the discovery of additional favorable

evidence that would have been more than merely cumulative of the evidence already discovered and presented at trial by the defense to undermine the victim's testimony or to otherwise exonerate petitioner. Defense counsel emphasized in closing argument that "no witness," including the victim, had provided detailed testimony regarding offenses that allegedly occurred prior to 2011. (*See id.*, Trial Tr. at PAGEID#: 927). Petitioner has not provided any information as to how a further investigation would have added to that defense or any other defense position. Therefore, because no showing has been made that a further investigation would have led to the discovery of "new evidence [that] differ[s] in a substantial way—in strength and subject matter—from the evidence actually presented" at trial, it was reasonable for the Ohio Court of Appeals to conclude that the investigation conducted by counsel was not constitutionally deficient and did not prejudicially affect the outcome of the trial as required by *Strickland. Cf. Tibbetts v. Bradshaw,* 633 F.3d 436, 443-44 (6th Cir. 2011) (quoting *Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005)); *see also Beuke v. Houk,* 537 F.3d 618, 644-45 (6th Cir. 2008); *United States v. Ashimi*, 932 F.2d 643, 649-50 (7th Cir. 1991).

Finally, petitioner is unable to prevail on any claim that his counsel was ineffective for failing to seek dismissal of the criminal charges in light of the victim's "perjured" testimony. Counsel did unsuccessfully move for petitioner's acquittal at the close of both the State's case and the presentation of the defense. (*See* Doc. 6, Trial Tr. at PAGEID#: 663-64, 864). Although counsel relied only on the lack of specific evidence regarding offenses that allegedly occurred during most of the years in question, it is highly unlikely that petitioner would have prevailed in obtaining an acquittal or dismissal of the charges based on the argument that the victim had given perjured testimony. The question whether or not the victim had provided false testimony was a disputed issue of fact that was properly left for the jury to decide. *See Jackson v. Virginia*,

24

443 U.S. 307, 319 (1979).

Accordingly, in sum, petitioner has not demonstrated that the Ohio Court of Appeals' adjudication of his ineffective-assistance-of-counsel claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 103. Because the Ohio court's adjudication of the Sixth Amendment issue is neither contrary to nor involves an unreasonable application of *Strickland*, the undersigned concludes that petitioner is not entitled to habeas relief based on the claim alleged in Ground Two of the petition.

## C. Ground Three: Inconsistent-Verdict Claim

In Ground Three of the petition, petitioner contends that he should have been acquitted of all charges when the jury found him not guilty of the rape offense charged in Count 1 of the indictment. (Doc. 1, at PAGEID#: 9). He claims that because he was acquitted on Count 1, the jury's guilty verdict on the remaining counts was an irregularity that amounted to a "structural" defect in the trial proceedings. (*Id.*).

In Count 1 of the indictment, petitioner was charged with a rape offense that occurred "[o]n or about 2000." (*See* Doc. 6, Ex. 1). The remaining eleven charges involved sex offenses that allegedly occurred in the subsequent years of 2001 through 2011. (*See id.*). The Ohio Court of Appeals, which was the only state court to address the issue raised herein, determined the claim lacked merit. Relying on Ohio law, the court reasoned in pertinent part as follows:

> It is well-established that "inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.". . . "Each count in an indictment charges a distinct offense and is independent of all other counts; a jury's decision as to one count is independent of and unaffected by the jury's finding on another count.". . .
>
> . . . .[T]he jury's verdict was supported by the manifest weight of the evidence. Although the jury found appellant not guilty on one count of rape, that finding

25

does not affect the validity of appellant's other convictions. Simply, the jury could reasonably believe that appellant committed the separate instances of sexual abuse between the years of 2001-2011, yet fail to find, beyond a reasonable doubt, that appellant committed one count of rape in 2000. Appellant's . . . assignment of error is without merit.

(*Id.*, Ex. 36, p. 14, at PAGEID#: 229) (Ohio case citations omitted).

As discussed above, *see supra* pp. 6-7, to the extent petitioner contends that the Ohio Court of Appeals misapplied or erred in its interpretation of Ohio law in overruling the assignment of error, this Court lacks jurisdiction to consider such a claim and, in any event, is bound by and must defer to the state appellate court's ruling on the state-law issue.

Furthermore, petitioner is unable to prevail on any claim that the jury's differing verdicts amounted to federal constitutional error. Without addressing whether the verdicts were even inconsistent,[7] it is well-settled under Supreme Court precedents that inconsistency between verdicts on separate charges against a defendant does not constitute reversible error or otherwise implicate federal constitutional concerns. *See, e.g., United States v. Powell*, 469 U.S. 57, 64-67 (1984); *Dunn v. United States*, 284 U.S. 390, 393 (1932); *see also Harris v. Rivera*, 454 U.S. 339, 345 (1981). As the Supreme Court explained in *Powell*, 469 U.S. at 67, "a criminal defendant is already afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. . . . We do not believe that further safeguards against jury irrationality are necessary."

Accordingly, petitioner is not entitled to federal habeas relief based on the claim alleged in Ground Three of the petition, which contrary to his contention, does not trigger any concerns of a "structural defect" or federal constitutional error subject to review in this proceeding.

---

[7] The undersigned notes, however, that the verdicts do not appear to be inconsistent. The jury could have reasonably found that petitioner's sexual abuse of the victim began in the year 2001 rather than 2000 given evidence introduced at trial that petitioner did not arrive in the United States until late in the year 2000. Therefore, as the Ohio Court of Appeals pointed out, the jury could have acquitted petitioner of the charge in Count 1 while finding that he did commit the offenses that subsequently occurred in the years 2001-2011.

**D. Ground Four: Claim Challenging The Jury Selection Process**

In Ground Four of the petition, petitioner alleges that his rights under the Sixth

Amendment and the Equal Protection Clause of the Fourteenth Amendment were violated

because African-Americans were excluded from the jury selection process. (*See* Doc. 1, at

PAGEID#: 11). He states as factual support for the claim that only one juror at his trial was not

"white." (*Id.*).

The Ohio Court of Appeals, which was the only state court to issue a reasoned decision

addressing the issue, overruled the assignment of error in the absence of a trial transcript or any

other evidence in the record to support petitioner's general allegation of intentional or systematic

exclusion of African-Americans from the venire. (*See* Doc. 6, Ex. 36, pp. 7-9, at PAGEID#:

222-24). Citing Ohio case-law, the court reasoned as follows:

> Pursuant to the Sixth and Fourteenth Amendments to the United States
> Constitution, a criminal defendant has the right to have a jury chosen from a fair
> cross section of the community. . . . In order to comply with the "fair cross
> section" requirement, a jury must be selected without the systematic or intentional
> exclusion of any cognizable group. . . . In order to establish a violation of the fair
> cross section requirement, a criminal defendant must demonstrate three things:
> "that the group alleged to be excluded is a distinctive group in the community, (2)
> that the representation of this group in venires from which juries are selected is
> not fair and reasonable in relation to the number of such persons in the
> community, and (3) [that] the under-representation is due to systematic exclusion
> of the group in the jury selection process.". . .
>
> In the present case, appellant has failed to support his assertion of racial
> discrimination. First, appellant has failed to produce or point to any evidence in
> the record that any distinctive group in the community was intentionally excluded
> from the jury venire. Appellant's sole argument to support his claim of racial
> discrimination is the bare assertion in his appellate brief that "members of his race
> have been impermissibly excluded from the venire and may make out a prima
> facie case of purposeful discrimin[ation]." Furthermore, as the state correctly
> points out in its brief, appellant failed to provide a transcript of the voir dire
> process and therefore there is nothing for this court to review.
>
> As this court has repeatedly explained, "[s]ince the appealing party bears the
> burden of showing error in the underlying proceeding by reference to matters in

27

the record, the appellant has a duty to provide a transcript for appellate review."…
"Where portions of the transcript necessary for resolution of assigned errors are
omitted from the record, the reviewing court has nothing to pass upon and thus
has no choice but to presume the regularity or validity of the lower court's
proceedings and affirm.". . .

A review of the record in this case reveals that appellant did not submit a
transcript of the voir dire process, which was necessary for this assignment of
error. Without a transcript, we cannot determine the validity of any of the
assertions that appellant made in his brief and we must presume the regularity of
the proceedings. As such, we find appellant has failed to support his assertion of
racial discrimination and therefore overrule his . . . assignment of error.

(*Id.*) (Ohio case citations omitted).

As the Ohio Court of Appeals recognized, it is well-settled that "[t]he Sixth Amendment

secures to criminal defendants the right to be tried by an impartial jury drawn from sources

reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010)

(citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). In order to establish a *prima facie* violation of

the Sixth Amendment's fair-cross-section requirement, the defendant must show: "(1) that the

group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation

of this group in venires from which juries are selected is not fair and reasonable in relation to the

number of such persons in the community; and (3) that this underrepresentation is due to

systematic exclusion of the group in the jury-selection process." *Id.* (quoting *Duren v. Missouri*,

439 U.S. 357, 364 (1979)). To establish "systematic exclusion" under the third prong of the test,

the defendant must show that the underrepresentation of a distinctive group in the community is

"inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366; *see also*

*United States v. Suggs*, 531 F. App'x 609, 619 (6th Cir. 2013). Once a defendant establishes a

*prima facie* case, the inquiry does not end because the burden then shifts to the government,

which has the opportunity to justify the infringement "by showing attainment of a fair cross

section to be incompatible with a significant state interest." *See Duren*, 439 U.S. at 368; *Suggs*,

531 F. App'x at 619.

In this case, as the Ohio Court of Appeals found, there is no evidence in the record pertaining to the selection of the jury panel. Indeed, there is no evidence in the record as to whether petitioner even complained about the racial composition of the jury or otherwise sought to establish a *prima facie* violation of the Sixth Amendment's fair-cross-section requirement during the trial proceedings. It is conceded that the first prong of the *Duren* test is satisfied because it is well-established that African-Americans are considered a "distinctive group in the community." *See, e.g., Castaneda v. Partida*, 430 U.S. 482, 492-94 (1977) (and cases cited therein); *Peters v. Kiff*, 407 U.S. 493, 497-98 (1972). However, it was reasonable for the Ohio Court of Appeals to find no merit to petitioner's claim in the absence of any evidence in the record even remotely indicating, as required under the second and third prongs of the *Duren* test, that African-Americans were not fairly represented in the venire from which the petit jury was chosen or that any underrepresentation was due to a systematic exclusion of African-Americans from the jury selection process.

The only "evidence" that petitioner has cited to support his claim of systematic, intentional racial discrimination in the jury selection process is that there was only one non-white juror on the panel selected to hear his case. However, the mere fact that eleven of the twelve jurors on that panel were Caucasian is insufficient to establish the second and third elements of a *prima facie* case. *Cf. United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998) (rejecting the contention that the defendants had met their burden of proof by showing their particular jury panel contained no African-Americans); *Suggs*, 531 F. App'x at 619 (citing *Allen* and *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008)) ("It is incumbent upon the defendant to show more than that a particular jury panel was unrepresentative."); *United States v. Smith*, 463

F. App'x 564, 571 (6th Cir. 2012) (citing *Allen* and *Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir. 1988)) (pointing out that the Supreme Court "has not held that a defendant is entitled to a jury of any particular racial composition" and that "systematic exclusion" cannot be inferred "[m]erely because the percentage of a distinctive group selected in a single venire does not mirror the percentage of the group in the entire community"). *See also Berghuis*, 559 U.S. at 319, 333 (in a case where the defendant was tried by an all-white jury, the Supreme Court upheld the state court's rejection of a fair-cross-section claim on the ground that the decision was "consistent with *Duren*" and did not involve an unreasonable application of clearly established federal law).

Accordingly, in sum, the undersigned concludes that the Ohio Court of Appeals' rejection of petitioner's fair-cross-section claim is neither contrary to nor involves an unreasonable application of the well-established Supreme Court precedents applicable to such claims. It was reasonable for the state court to find no merit to the claim in the absence of any evidence in the record to support petitioner's conclusory assertion of racial discrimination in the jury selection process. Therefore, petitioner has not demonstrated that he is entitled to relief based on the claim alleged in Ground Four of the petition.

### E. Ground Five: Prosecutorial Misconduct Claim

In Ground Five of the petition, petitioner alleges that he was deprived of his constitutional right to a fair trial because the prosecutor engaged in the following misconduct during trial: (1) the prosecutor improperly stated that the sexual abuse began in the spring of 2000 before petitioner had even arrived in the United States; (2) the prosecutor made improper statements vouching for the credibility of the victim; (3) the prosecutor improperly shifted the burden of proof ; and (4) the prosecutor generally "made multiple improper comments throughout the trial." (*See* Doc. 1, at PAGEID#: 13). It appears from the record that the specific

instances of alleged misconduct cited by petitioner occurred during the prosecutor's closing argument. (*See* Doc. 6, Trial Tr. at PAGEID#: 887, 902).

The Ohio Court of Appeals was the only state court to render a reasoned opinion addressing the issues that were raised by petitioner on direct appeal.  Citing only Ohio case-law, the court ruled as follows:

> The state is entitled to a certain degree of latitude in making its concluding remarks. . . .  A court will find prosecutorial misconduct only when the remarks made during closing were improper and those improper remarks prejudicially affected substantial rights of the defendant. . . .  "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor.". . .  Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial remarks.
>
> Appellant first argues the prosecutor committed misconduct by improperly vouching for the credibility of the victim and by commenting on evidence not contained in the record.  In support of this allegation, appellant raises a litany of general complaints and again reiterates his mistaken belief that the only evidence of any crime is the videotaped recording of him sexually abusing A.P. when she was 17 years old.  Because appellant's counsel did not object to these statements at trial, our review of the record is limited to plain error. . . .
>
> Initially, we observe that the jury was instructed that the statements made during closing arguments were not evidence.  We must therefore presume that the jury followed the trial court's instructions. . . .
>
> Appellant's first set of complaints are more general in nature and fail to specifically reference any objectionable statements other than vague assertions of misconduct.  Having reviewed the prosecutor's closing argument, we find the prosecutor's statements to be proper.  In closing argument, the prosecutor may comment freely on "what the evidence has shown, and what reasonable inferences may be drawn therefrom.". . .  "It is not improper to make comments in the context of explaining why a witness'[s] testimony is or is not credible in light of the circumstances of the evidence, [where] the prosecutor neither implies knowledge of facts outside the record nor places his or her personal credibility in issue by making such argument.". . .  Here, the prosecutor simply summarized the testimony that was offered by the state's witnesses during trial and asked the jury to determine whether such evidence was credible.  The prosecutor did not improperly vouch for A.P. by implying knowledge of facts outside the record or placing her personal credibility at issue.  Rather, the prosecutor's statements were limited to and directed at the evidence presented at trial, and how such evidence

31

could be interpreted by the jury. Appellant's argument that the only credible evidence of sexual abuse is the videotaped recording of sexual abuse is simply incorrect and is a proposition that the jury ultimately disregarded as less than credible.

Appellant next argues that there was prosecutorial misconduct in this case based on the prosecutor's alleged statements relating to the burden of proof in a criminal trial. In closing arguments, the state recited the evidence in favor of conviction and discussed all relevant factors in convicting appellant of the indicted offenses. In making her concluding remarks, the state attorney noted:

> At the beginning of this case, we talked extensively about the presumption of innocence. And I told you that the State would remove that presumption of innocence as it presented its evidence. At this point, the presumption is gone.

Appellant's trial counsel later objected to this statement and alleged that the statement inappropriately stated that appellant was no longer presumed innocent. Following appellant's objection, the trial court gave a cautionary instruction to the jury regarding the presumption of innocence and the burden of proof.

> THE COURT: Ladies and gentlemen of the jury, the Court wants to give you a couple of cautionary instructions. First one you may recall. I first mentioned, we talked about the burden of proof, and I told you that the burden of proof is on the State of Ohio. And that remains true, and I will give you final instructions in a few minutes, and I'll once again remind you that the State bears the burden of proving each and every element of each count of the indictment. The State or rather the defendant does not have a burden of proof.

> ***

> I just want to caution you, ladies and gentlemen, not to lose sight of the fact that as far as the burden of proof to prove the elements of the offense, the State still bears the burden of proof. The defendant does not have a burden of proof to prove anything in this case, so I don't want the prosecutor's questions or the argument to create in your minds some confusion as to which side bears the burden of proof. Is that understood? And everyone is indicating yes for the record.

> Now apparently - - [the prosecutor] made a comment toward the end of her argument to the effect of the presumption is now gone, referring to the presumption of innocence. Well, the presumption remains until you ladies and gentlemen go back to the jury room

and determine whether or not the State by the presentation of proof beyond a reasonable doubt has rebutted the presumption of innocence, whether that presumption has been overcome and now the State has proved the defendant's guilt.

So I want to be clear that the presumption is not now gone. Only you can determine that following your deliberations in this case later on in the proceeding.

Of another choice of words that she might have used in hindsight *** I think what she probably tried to say and we discussed it here at the bench, she can correct me if I'm wrong is that the State, as far as the State is concerned, would argue that they've now rebutted that presumption of innocence. Does everyone understand? Fair enough.

Based on our review, we find the prosecutor's statement did not deprive appellant of a fair trial. The statement merely reflected the state's argument that sufficient and substantial evidence was presented for the jury to appropriately return a guilty verdict. Furthermore, any perceived error in this comment was surely cured by the cautionary instruction issued by the trial court, which re-emphasized, on multiple occasions, that the state had the burden of proof and appellant was entitled to a presumption of innocence until proven guilty. We presume that jurors follow the cautionary instructions given by the trial court. . . . Accordingly, we find no merit to appellant's argument that he received an unfair trial on the basis of prosecutorial misconduct. Accordingly, appellant's . . . assignment of error is overruled.

(Doc. 6, Ex. 36, pp. 18-22, at PAGEID#: 233-37) (Ohio case citations omitted).

As an initial matter, as the respondent has argued in the return of writ (*see* Doc. 7, pp. 34-35, at PAGEID#: 1055-56), petitioner procedurally defaulted and has waived any claims of prosecutorial misconduct that he either failed to assert by way of objection at trial or failed to present as an issue on direct appeal. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4,

6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). Therefore, to the extent that petitioner has raised claims that were not presented to the state courts for consideration on appeal from his conviction, those allegations of prosecutorial misconduct have been procedurally defaulted.

Furthermore, to the extent that petitioner has also asserted claims of misconduct that were raised on direct appeal but were not objected to at trial, it is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See, e.g., Harris v. Reed,* 489 U.S. 255, 260-62 (1989). Ohio's contemporaneous objection rule is a firmly-established, adequate and independent state procedural rule, which serves to foreclose federal habeas review when relied on by the state courts as a basis for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005) (citing *Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003)); *see also State v. Murphy,* 747 N.E.2d 765, 788 (Ohio 2001) (pointing out that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice"). The Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule." *See, e.g., Williams v.*

*Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin*, 632 F.3d at 315. Here, the Ohio Court of Appeals clearly enforced the state procedural bar to review when it stated its review was "limited to plain error" with respect to statements made by the prosecutor allegedly vouching for the credibility of the victim and commenting on evidence not contained in the record, which were not objected to at trial. (*See* Doc. 6, Ex. 36, p. 19, at PAGEID#: 234). Under well-settled Sixth Circuit precedents, the state appellate court's plain-error review did "not constitute a waiver of state procedural default rules." *See, e.g., Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)); *see also Goodwin*, 632 F.3d at 315.

Because of the procedural defaults that occurred both at trial and on appeal, any defaulted claims of prosecutorial misconduct alleged in the instant action are waived and barred from review by this Court unless petitioner "can demonstrate cause for the default[s] and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Hoffner v. Bradshaw*, 622 F.3d 487, 497 (6th Cir. 2010) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Petitioner has not presented any arguments to establish cause for his procedural defaults in the state courts. Moreover, petitioner has not demonstrated that failure to consider any defaulted claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray v. Carrier,* 477 U.S. 478, 495-96 (1986); *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). No such showing has been made to the extent that petitioner has challenged the weight or sufficiency of the evidence introduced at trial to establish his guilt, because actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517,

538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

In any event, petitioner has not demonstrated that the Ohio Court of Appeals' adjudication of petitioner's prosecutorial misconduct claim is contrary to or involves an unreasonable application of clearly established federal law as determined by the Supreme Court.

As the Ohio Court of Appeals recognized, petitioner is not entitled to relief unless the prosecutor's alleged errors "so infected the trial with unfairness as to render the resulting conviction a denial of due process." *See Donnelly v. DeChristoforo,* 416 U.S. 637, 642-43 (1974); *see also Darden v. Wainwright,* 477 U.S. 168, 181 (1986) ("it 'is not enough that the prosecutor's remarks were undesirable or even universally condemned[;]'" rather, the "relevant question" is whether the prosecutor's challenged conduct rendered the trial fundamentally unfair in violation of due process). The alleged misconduct must be examined within the context of the entire trial to determine whether it deprived the defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985). The Sixth Circuit has held that in order to prevail on a claim of prosecutorial misconduct, the petitioner must show that the alleged misconduct was "both improper and flagrant." *See, e.g., Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir. 2009) (and Sixth Circuit cases cited therein).

In this case, to the extent that petitioner has contended the prosecutor made statements during closing argument that rose to the level of improper vouching for the victim's credibility, it was reasonable for the Ohio Court of Appeals to reject that argument as meritless. As the state appellate court understood, "'[i]mproper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing

the prestige of the [government] behind that witness,' and usually involves 'some implication that the prosecutor ha[d] special knowledge of facts not before the jury related to the credibility of a witness.'" *Miller v. Burt*, __ F. App'x __, No. 15-2269, 2016 WL 1169096, at *5 (6th Cir. Mar. 25, 2016) (quoting *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008)). None of the comments cited by petitioner as constituting improper vouching amount to a statement of personal belief as to the victim's credibility or suggest the prosecutor had special knowledge of facts not before the jury regarding the victim's credibility. Rather, when viewed in the context of the entire closing argument, it appears that, as the Ohio Court of Appeals reasonably found, the remarks were not intended by the prosecutor as a personal vouching for the victim's credibility, but rather to show that in light of the evidence presented at trial, the victim's testimony was to be believed instead of petitioner's testimony. (*See* Doc. 6, Trial Tr. at PAGEID#: 886-88, 902). In any event, even assuming, solely for the sake of argument, that the prosecutor's comments could have been construed as a statement of personal belief, they were not so egregious or misleading to have prejudicially affected the jury in determining petitioner's guilt or innocence on the criminal charges. Indeed, the jury acquitted petitioner of one of the rape charges, which indicates the verdicts were reached on the basis of the evidence rather than any personal appeal by the prosecutor on the victim's behalf.

To the extent petitioner has alleged the prosecutor made comments that improperly shifted the burden of proof from the State to the defense, it was reasonable for the Ohio Court of Appeals to find that any such error was cured by the trial court's lengthy cautionary instruction to the jury following defense counsel's objection to the remarks. (*See id.*, Trial Tr. at PAGEID#: 906-10).

To the extent that petitioner challenges the prosecutor's statement that the sexual abuse began in the "spring of 2000" (*see id.*, Trial Tr. at PAGEID#: 879), the comment does not appear to have been improper because the time of petitioner's arrival that year in the United States was in dispute. (*See id.*, Trial Tr. at PAGEID#: 880, 904-05). In any event, the remark did not prejudicially affect the jury because petitioner was acquitted on the count charging him with the rape offense that allegedly occurred in the year 2000.

Finally, as the Ohio Court of Appeals similarly noted in addressing petitioner's complaints that were "more general in nature and fail[ed] to specifically reference any objectionable statements" (*see id.*, Ex. 36, p. 19, at PAGEID#: 234), petitioner is not entitled to relief based on the vague and conclusory allegation that the prosecutor "made multiple improper comments throughout the trial."

Accordingly, in sum, petitioner is not entitled to federal habeas relief based on the merits of the prosecutorial misconduct claim alleged in Ground Five of the petition.

## F. Ground Seven: "Perjured Testimony" Claim

Although Ground Seven of the petition is difficult to decipher, it appears that petitioner is seeking federal habeas corpus relief on the ground that his conviction was improperly obtained on the basis of the victim's "perjured testimony." (*See* Doc. 1, at PAGEID#: 13).

The Ohio Court of Appeals, which construed the claim "as a challenge to the manifest weight of the evidence," rejected it as meritless. (*See* Doc. 6, Ex. 36, p. 10, at PAGEID#: 225). In overruling the assignment of error under standards governing the state-law issue,[8] the court

---

[8] *See, e.g., Richardson v. Smith,* No. 3:11cv1217, 2012 WL 5903986, at *17 (N.D. Ohio Oct. 30, 2012) (Report & Recommendation) (quoting *Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982)) (claim that a conviction is against the manifest weight of the evidence is "derived from purely state law whereby the state appellate court sits as a 'thirteenth juror and disagrees with fact finder's resolution of conflicting testimony' and finds that the fact finder 'clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered'"), *adopted*, 2012 WL 5903896 (N.D. Ohio Nov. 26, 2012). *Cf. Nash v. Eberlin*, 258 F. App'x 761, 765 &

reasoned in relevant part as follows:

> We begin by noting that this case involves allegations of sexual abuse from 2000 until 2011, when the victim was between the ages of six and 17 years old. Because of the continuing nature of the sexual abuse, the state did not set forth specific dates for each offense in the indictment, but instead charged appellant with one criminal offense for each year that the abuse continued.

> As we have . . . noted, "[a] precise time and date of an alleged offense are not ordinarily essential elements.". . . In sexual abuse cases involving children, it may be impossible to provide a specific date. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases.". . .

> In this case, appellant was charged with three different crimes: (1) seven counts of rape when A.P. was between the ages of six and 12; (2) three counts of unlawful sexual conduct with a minor when A.P. was between the ages of 13 and 15 years old; and (3) two counts of contributing to the unruliness or delinquency of a child when A.P. was 16 and 17 years old.

> Rape is defined under R.C. 2907.02 and provides "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender *** when *** [t]he other person is less than thirteen years of age[.]"

> The crime of unlawful sexual conduct with a minor is defined under R.C. 2907.04, and provides "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."

> Sexual conduct, as defined in both R.C. 2907.02 and R.C. 2907.04, includes, inter alia, vaginal intercourse, fellatio, cunnilingus, and digital penetration of the vagina. R.C. 2901.01(A).

> Finally, appellant was charged with two counts of contributing to the unruliness or delinquency of a child in violation of R.C. 2919.24, which provides "[n]o person *** shall *** [a]id, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child." An "unruly child" includes any child "[w]ho so deports himself as to injure or endanger the health or

---

n.4 (6th Cir. 2007) (recognizing that "a manifest-weight-of-the-evidence argument is a state-law argument"). It is noted that because a manifest-weight-of-evidence claim presents only an issue of state law, this Court lacks jurisdiction to consider it as a possible ground for federal habeas relief. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1, 5-6 (2010); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Jackson v. Warden, Chillicothe Corr. Inst.,* No. 1:14cv128, 2015 WL 4481517, at *1, *16 (S.D. Ohio July 22, 2015) (Dlott, J.; Wehrman, M.J.) (and cases cited therein).

morals of himself or others.". . . "As a matter of law, a child is unruly who engages in sexual activity with an adult, 'as it is inherently injurious to the morals of the child or others.'". . .

In the present case, A.P. testified that appellant began sexually abusing her in 2000 when she was six years old. A.P. acknowledged that appellant had sexually abused her repeatedly. Specifically, A.P. testified that appellant had engaged in separate acts of fellatio, cunnilingus, vaginal intercourse, and digital penetration of her vagina for each year beginning in 2000 and ending in 2011. A.P. stated that each instance of sexual conduct occurred when she was alone with appellant. This testimony was corroborated by A.P.'s mother who testified that appellant routinely helped A.P. get ready for school in the morning and had a key to the residence.

A.P.'s testimony was further corroborated by appellant's own admissions made to the police during the police interrogation. In his interview with Detective Mize, appellant admitted to touching A.P.'s private areas, including her breasts, vaginal area, and buttocks many times over the years. In addition, appellant admitted to Detective Mize that he had: (1) touched A.P. in her private areas more than 50 times; (2) engaged in cunnilingus or fellatio at least ten times; and (3) had sexual intercourse with A.P. at least ten times.

Finally, neither party disputes A.P.'s age or date of birth. Therefore, it is undisputed that A.P. was under the age of consent at all times relevant to the instances of sexual abuse and under the age of 13 and 16, respectively, for each count of rape and unlawful sexual conduct with a minor.

In light of the evidence presented, the jury did not clearly lose its way in concluding that appellant was guilty of six counts of rape, three counts of unlawful sexual conduct with a minor, and two counts of contributing to the unruliness or delinquency of a child. Although appellant denies that he had sexual contact with A.P., except for the 2011 incident caught on videotape, the jury, as trier of fact, was in the best position to weigh the credibility of the witnesses. The jury simply did not believe that appellant's position was credible. Appellant's convictions are not against the manifest weight of the evidence.

(*Id.*, pp. 11-13, at PAGEID#: 226-28).

As an initial matter, as mentioned above in addressing a related issue raised in Ground

Two of the petition, *see supra* p. 24, petitioner is not entitled to habeas relief solely on the basis

of his conclusory allegation that the victim gave "perjured testimony." As the Ohio Court of

Appeals reasonably found in considering whether the jury's verdicts of guilt were supported by

the weight of the evidence, the question of whether or not the victim gave "perjured testimony" was a disputed issue of fact that was properly left for the jury, as the trier of fact, to decide when weighing the evidence and credibility of the various witnesses who testified at trial.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The undersigned rejects any suggestion by petitioner that perjury was established by the jury's verdict of acquittal on the rape charge in Count 1 of the indictment.  The victim was only six years old when the offense charged in Count 1 allegedly occurred.  The jury could have reasonably inferred that the victim, who provided vague, confused or inconsistent statements as to when the sexual abuse began (*i.e.*, either in 2000 or 2001), was too young to know the exact year the sexual abuse started but was telling the truth about petitioner's "pattern of conduct that continued throughout [the] years" thereafter.  (*See* Doc. 6, Trial Tr. at PAGEID#: 405-06, 409, 411-13, 425-26, 436, 632, 657).

To the extent that petitioner has also suggested in Ground Seven that his constitutional right to due process was violated because the evidence was insufficient to establish his guilt beyond a reasonable doubt on the criminal charges, this Court is constrained by the standard of review established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979).  As the Supreme Court held in that case, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship*, 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt.  *Id.* at 326.  Rather, "a federal habeas corpus court faced

41

with a record of historical facts that supports conflicting inferences must presume–even if it does

not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of

the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959,

969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in

testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,*

443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence,

reevaluate the credibility of witnesses, make its own subjective determination of guilt or

innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see*

*also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567

F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v.*

*Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th

Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is

enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a

reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at

796-97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is

even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal

habeas court is "bound by two layers of deference to groups who might view facts differently

than [the habeas court] would." The federal habeas court must defer not only to the trier of

fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the

*state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis

in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011); *Anderson v. Trombley*,

451 F. App'x 469, 474-75 (6th Cir. 2011). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, and upon review of the trial record, the undersigned concludes that the Ohio Court of Appeals' rejection of petitioner's claim under the more stringent state-law standard of review governing manifest-weight-of-evidence claims,[9] *see supra* pp. 38-39 n.8, comports with *Jackson*. A rational juror could have inferred from the victim's testimony (*see* Doc. 6, Trial Tr. at PAGEID#: 409-14, 416-17, 483, 500-01), as corroborated by the victim's mother and petitioner's own statements to the police (*see id.*, Trial Tr. at PAGEID#: 546-53, 559, 606-08, 638-39, 642, 645-57), that petitioner committed the offenses charged against him in Counts 2 through 12 of the indictment. Petitioner cannot succeed in challenging the sufficiency of the evidence to the extent he contends that the primary evidence of his culpability came from the victim, whose trial testimony should have been viewed as suspect and lacking in credibility. In assessing the sufficiency of the evidence under the *Jackson* standard of review, the reviewing court is precluded from reweighing the evidence, reevaluating the credibility of witnesses or resolving conflicts in testimony, because those are issues for the fact-finder to decide. *See Jackson,* 443 U.S. at 318-19 & n.13; *see also*

___

[9] *See Jackson v. Warden, Chillicothe Corr. Inst.,* No. 1:14cv128, 2015 WL 4481517, at *16 (S.D. Ohio July 22, 2015) (Dlott, J.; Wehrman, M.J.) (pointing out that the state-law standard of review is "more stringent" given that a "finding that a conviction is supported by the weight of the evidence [under Ohio law] must necessarily include a finding of sufficiency").

*Fisher,* 648 F.3d at 450 (citing *Brown,* 567 F.3d at 205). In any event, a rational juror could have chosen to believe the victim's testimony, particularly given that the primary evidence refuting her version of events was provided by petitioner, whose own self-serving testimony reasonably could have been found to be even more suspect and lacking in credibility.

Accordingly, in sum, petitioner has not demonstrated that he is entitled to relief based on the claim alleged in Ground Seven of the petition.

### G. Ground Six: Claim Of Cumulative Error

Petitioner alleges in Ground Six of the petition that the accumulation of errors that occurred during his trial deprived him of his constitutional right to a fair trial. (*See* Doc. 1, at PAGEID#: 13). Petitioner is not entitled to relief based on such a claim.

As discussed above, *see supra* pp. 6-7, the federal habeas corpus remedy is available only to correct federal constitutional violations. *See* 28 U.S.C. § 2254(a); *see also Wilson v. Corcoran,* 562 U.S. 1, 5 (2010); *Pulley v. Harris,* 465 U.S. 37, 41 (1984). As the Sixth Circuit has made clear in numerous decisions, following the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996, "not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (quoting *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010), in turn quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)). As the Sixth Circuit explained in *Moore*, habeas relief cannot be granted post-AEDPA on the basis of cumulative error because there is "no Supreme Court precedent obligating the state court to consider the alleged trial errors cumulatively." 425 F.3d at 256. *See also Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Therefore, because none of petitioner's individual claims of trial error merit habeas relief, petitioner is unable to obtain habeas relief based on the claim of

cumulative error alleged in Ground Six of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. The petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to any of the grounds for relief alleged in the petition because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 5/2/16

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PAUL D. VUNDA,
    Petitioner,

    vs.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:15-cv-301

Dlott, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc